IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

| | | |
|---|---|---|
| GALINA RYTSAR, | ) | |
| | ) | |
| Plaintiff | ) | 1:25-CV-00205-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| SIMEON K. OBENG, DOCTOR; | ) | |
| RENEE ROCKWOOD, CRNP; AND | ) | MEMORANDUM OPINION ON |
| HARMON, (JANE) MEDICAL | ) | MEDICAL DEFENDANTS' MOTION |
| COORDINATOR, | ) | TO DISMISS |
| | ) | |
| Defendants | ) | RE: ECF NO. 15 |

Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss all claims of Plaintiff's Complaint. *See* ECF No. 15. For the following reasons, Defendants' motion will be GRANTED in part and DENIED in part.[1]

I. Relevant Procedural History

Plaintiff Galina Rytsar ("Rytsar") is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") at its State Correctional Institution at Cambridge Springs, Pennsylvania ("SCI-Cambridge Springs"). She commenced this pro se action against Dr. Simeon, K. Obeng, PA Renee Rockwood, and Health Services Administrator Morgan Harmon (collectively "Defendants"), three individuals contracted to provide medical services to inmates at SCI-Cambridge Springs. *See* ECF No. 6 at 1.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Rytsar's Complaint asserts an Eighth Amendment claim against all Defendants based on their alleged deliberate indifference to her serious medical needs and a Fourteenth Amendment substantive due process claim against Defendants Obeng and Rockwood based on their alleged failure to disclose the side effects and risks associated with medication they prescribed for her. As relief, the Complaint seeks nominal and punitive damages and a declaration that the Defendants' acts and omissions violated Rytsar's rights under the U.S. Constitution. The Complaint does not request compensatory damages. Defendants have moved to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 15. The motion has been fully briefed and is ripe for disposition. *See* ECF No. 16 (Defendants' brief in support); ECF No. 21 (Rytsar's brief in opposition).

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and views them in a light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A.

Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

While a complaint does not require detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Finally, because Rytsar is proceeding pro se, her Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the Court can reasonably read his pro se pleading to state a valid claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969). But "any pleading must still contain sufficient factual allegations that,

when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted).

III. Factual Allegations and Claims

For purposes of the pending motion to dismiss, the Court accepts as true the following factual allegations of the Complaint. In December 2019, Rytsar complained to Defendant Rockwood that she was experiencing chest pains. ECF No. 6, ¶ 5.[2] Rockwood prescribed Coumadin, a blood thinner. He explained that Rytsar was experiencing chest pain "because her blood was too thick" and was preventing adequate oxygen to her heart. Rockwood did not inform her of the side effects, risks, or symptoms to look out for if the dosage of Coumadin was incorrect or discuss medications that should not be taken while she was on Coumadin.

Sometime in 2023, Defendant Obeng changed the strength of her Coumadin, allegedly without her consent and without warning her about potential side effects or risks. On August 15, 2023, Rytsar noticed a large unexplained bruise on her thigh area. Thereafter, Rytsar developed more bruising on her body and suffered from nose bleeds. Rytsar then began developing joint pain in her ankles and wrists as well as experiencing dizziness and periodic blackening in her vision. By early September 2023, Rytsar became concerned because she was experiencing extreme weakness and pain as well as swelling to her arms and legs making it difficult for her to walk or use her hands.

---

[2] The relevant factual allegations are set out in paragraphs 5-21 of Rytsar's Complaint (ECF No. 6). Citations to the pleading are omitted except for quoted allegations.

On September 5, 2023, Rytsar went for her monthly International Normalized Ratio or "INR" test to measure her clotting time, but the nurse could not get a readable result despite several tries on two different machines. The nurse informed Rytsar that her blood was too thin to allow a readable result. Rytsar then showed the nurse the bruising on her body and notified her of the extreme weakness she was feeling and pain she was experiencing in her ankles and wrists. The nurse attempted to reach Obeng three times but was unsuccessful; she recommended that Rytsar refuse her Coumadin because she believed it was causing her symptoms.

On September 6, 2023, Rytsar placed a sick call regarding the pain and swelling she was experiencing and expressed concerns of developing blood clots. Defendant Harmon failed to schedule an appointment for her to be seen by medical. By the evening of September 7, 2023, Rytsar had not heard from medical, and she spoke to a sergeant on duty and explained her symptoms. The sergeant called medical and sent Rytsar to be seen by two nurses on duty. The nurses stated they were unable to do anything without the approval of Dr. Obeng, who had already left for the evening. The nurses informed Rytsar that they would call her the following day, however, she was not seen or called.

Rytsar conducted her own research using the library at SCI-Cambridge Springs and discovered that Coumadin should not be taken with Zoloft, the blood pressure medication she was currently prescribed. If Rytsar had been informed of the risks and symptoms associated with Coumadin, she would have refused to take and thereby avoided the suffering and discomfort she had experienced.

Based on the foregoing alleged facts, Rytsar asserts two distinct but related constitutional claims: (1) an Eighth Amendment claim against all Defendants based on alleged deliberate indifference to her serious medical needs; and (2) a Fourteenth Amendment substantive due process claim against Defendants Rockwood and Obeng based on their alleged failure to inform her of the risks, contraindications, and side effects of Coumadin. In support of their motion to dismiss these claims, Defendants argue that (1) Rytsar is barred from recovering monetary damages because she did not request them in any of her prison grievances; (2) Rytsar's Complaint fails to state a claim under the Eighth Amendment because the facts alleged do not support a finding that any Defendant acted with deliberate indifference to her medical needs; and (3) Rytsar's Fourteenth Amendment claim fails because federal law does not recognize a prisoner's right to informed consent to prescription medication.

IV. Discussion and Analysis

A. Rytsar procedurally defaulted her claims for compensatory, nominal, and punitive damages by failing to request such relief in her grievances, but she did raise and preserve her demand for declaratory relief.

Defendants argue that Rytsar is precluded from recovering monetary damages in this lawsuit because she did not request such relief in any administrative grievance submitted at the prison.[3] Under the Prison Litigation Reform Act ("PLRA"),

[3] In support of this position, Defendants have attached Rytsar's grievance history, copies of her grievances and appeals, and an affidavit to their brief in support of their motion to dismiss. *See* ECF Nos. 16-2, 16-3. This Court normally does not permit a defendant asserting an administrative exhaustion affirmative defense in a motion under Rule 12(b)(6) to rely on materials outside the pleadings unless the defendant moves in the alternative for summary judgment and complies with the requirements of Western District of Pennsylvania Local Civil Rule 56.C, including the requirement that the motion be accompanied by a concise statement of material facts. This requirement is intended to ensure that a plaintiff has a fair and procedurally proper means to contest the factual assertions upon which the defendant relies in support of the affirmative defense. Here, however, Rytsar has

prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Courts do not have discretion to waive or excuse this statutory requirement, even in "special circumstances," unless administrative remedies were "unavailable" to the plaintiff. *See Ross v. Blake*, 578 U.S. 632 (2016). Failure to exhaust administrative remedies is an affirmative defense that the defendant plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). When properly raised, exhaustion presents a threshold issue that the Court must resolve before addressing the merits of a prisoner's claims. *See Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).

The DOC's general grievance policy, DC-ADM 804, applies to most inmate complaints and concerns regarding prison conditions. Among other requirements, it specifies that "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." DC-ADM 804 (A)(11)(d). An inmate who fails to request monetary relief in her grievance in accordance with this provision has procedurally defaulted

---

conceded that she did not request monetary damages in any of her grievances. *See* ECF No. 21 ¶ 7. Accordingly, the Court will address Defendants' failure-to-exhaust defense despite their having relied upon outside material to support their motion to dismiss.

her claim as to such damages and may not recover them in a subsequent lawsuit. *See Spruill v. Gillis*, 372 F.3d 218, 233-235 (3d Cir. 2004).

Rytsar acknowledges that she did not request compensatory damages in any of her prison grievances and that she is therefore precluded from recovering such damages in this case. *See* ECF No. 21, ¶ 7. Indeed, her Complaint does not request compensatory damages. *See* ECF No. 6 at 6. But her Complaint does demand nominal and punitive damages. *Id.* "The primary purpose of nominal damages in [civil rights] cases is thus to guarantee that a defendant's breach of these duties will remain actionable regardless of their consequences in terms of compensable damages." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 318 (2d Cir. 1999). They satisfy the redressability element of Article III standing "even if [the plaintiff] cannot or chooses not to" seek other damages. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 290-93 (2021). The Court of Appeals for the Third Circuit has yet to address whether an inmate's failure to request nominal damages in a grievance precludes their recovery in a subsequent lawsuit. But several district courts within the Third Circuit have addressed the issue and held that nominal damages are not recoverable absent a request for monetary relief in an applicable grievance. *See e.g., Zhinin v. Booher*, 2026 WL 2280767, at *3 n.5 (M.D. Pa. Aug. 7, 2026) (collecting cases). As the court in *Zhinin* observed, "[t]o permit an unexhausted, stand-alone claim for nominal damages could invite plaintiffs to sue in federal court without completing exhaustion in any form or even attempting to do so" and thereby "frustrate the purposes of the PLRA's exhaustion requirement, which include giving the responding agency "an

opportunity to correct its own mistakes ... before it is haled into federal court." *Id.* (citing *Woodford*, 548 U.S. at 88-90). The same applies to Rytsar's claim for punitive damages. *See Brown v. Caison*, 2026 WL 701562, at *3 (M.D. Pa. Mar. 12, 2026); *Young v. Walters*, WL 2970241, at *5 (W.D. Pa. Aug. 5, 2025), *report and recommendation adopted*, 2025 WL 2970237 (W.D. Pa. Oct. 21, 2025). Because Rytsar failed to request monetary relief in any form during the administrative grievance process, she did not properly exhaust a claim for compensatory, nominal, or punitive damages and is precluded from recovering any such damages in this case.

In Grievance No. 1054371, Rytsar did request "a change in medication" and changes to medical department procedures regarding her care. *See* ECF 16-3 at 6. These requests are essentially demands for declaratory relief that Rytsar exhausted them through the grievance process. Rytsar has therefore preserved her right to demand declaratory relief in this action. Thus, while Rytsar may not pursue claims for compensatory, nominal, or punitive damages in this action, her surviving claim for declaratory relief necessitates that the Court address the merits of her Eighth and Fourteenth Amendment claims.

B. The Complaint fails to state a claim under the Eighth Amendment.

The Eighth Amendment's prohibition of cruel and unusual punishment extends to prison officials' "deliberate indifference" to inmates' "serious medical needs." *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted).

To state a claim for violation of her Eighth Amendment right to medical care, Rytsar must allege facts to support findings that: (1) she had a serious medical need, and (2) the Defendant prison officials acted with deliberate indifference to that need. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is "one that has been diagnosed as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Walker v. Brooks*, 2009 WL 3183051 (W.D. Pa. Sept. 30, 2009) (citing *Monmouth County Correction Institute Inmates v. Lanzaro*, 834 F. 2d 326,347 (3d Cir. 1987)). *See also Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991) (observing that a serious medical need exists when "a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death"). A prison official acts with deliberate indifference to a prisoner's medical need when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Such indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

The Complaint alleges facts sufficient to support the "serious medical need" element of Rytsar's Eighth Amendment claim. It alleges that in 2019, Rytsar presented to Dr. Rockwell with chest pains that he diagnosed as having been caused

by a blood condition. To treat this condition, Dr. Rockwell prescribed Coumadin, a medication that Rytsar continued to take until at least 2023, when Dr. Obeng adjusted her dosage. Rytsar's allegations thus support that she presented with and continued to have a medical condition that required ongoing medical treatment. Defendants do not appear to contest this element of the claim.

Defendants' principal challenge is the sufficiency of the allegations to support a plausible inference that any Defendant acted with the deliberate indifference to Rytsar's medical need. Allegations of deliberate indifference must satisfy "a high threshold." *Anderson v. Bickell*, 2018 WL 5778241, at *2 (3d Cir. Nov. 2, 2018). "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," *Durmer*, 991 F.2d at 67, and "it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim," *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 3518459 (M.D. Pa. July 20, 2018). Similarly, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (citing *Estelle*, 429 U.S. at 106). Based on these principles, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000).

As to each of the Defendants, the allegations of the Complaint fail to meet the high bar necessary to support an inference of deliberate indifference. As to Defendant Harmon, Rytsar alleges only that she failed to schedule her to be seen after she submitted a sick-call request on September 6, 2023. ECF No. 6, ¶¶ 16-17. Harmon, however, is a healthcare services administrator, not a medical provider. Non-medical prison officials generally are entitled to rely upon the professional judgment of treating medical personnel and cannot be held liable under the Eighth Amendment merely because they fail to intervene in an inmate's medical treatment. *Durmer*, 991 F.2d at 68; *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Liability attaches only where the non-medical official has actual knowledge or reason to believe that medical staff are mistreating or refusing to treat the inmate. *Spruill*, 372 F.3d at 236. The Complaint acknowledges that Rytsar was consistently under the care of prison medical staff. Although Rytsar alleges that Harmon did not promptly schedule an appointment after she submitted a sick-call request, this allegation does not support an inference that Harmon interfered in her treatment or consciously disregarded a substantial risk to health or safety. The Complaint therefore fails to state an Eighth Amendment claim against Harmon.

The allegations of the Complaint also fail to state an Eighth Amendment deliberate indifference claim against Defendants Rockwood and Obeng. Rytsar alleges that Rockwood prescribed Coumadin in 2019 for chest pain and that Obeng later adjusted the medication's dosage without her consent. She further alleges that neither physician adequately warned her about Coumadin's risks, potential side

effects, or interactions with other medications, and that after the dosage change, she developed bruising, nosebleeds, weakness, joint pain, dizziness, and swelling. Rytsar alleges that she would have refused the medication had she been informed of its risks.

As a threshold matter, these allegations belie any denial of care by Rockwell or Obeng. The allegations support that Rockwell and Obeng treated Rytsar's condition by prescribing anticoagulation medication and that they or other medical personnel periodically monitored the effects of that medication through INR testing. Instead, Rytsar faults both Rockwell and Obeng for not explaining the potential side effects, risks, and drug interactions associated with Coumadin and, perhaps, for inadequate monitoring of her condition and calibration of her dosage. But these are allegations of negligent care, not deliberate indifference, and as such, they are insufficient to support an Eighth Amendment claim. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *James v. Pa. Dep't of Corr.*, 230 Fed. Appx. 195, 197 (3d Cir. 2007) (holding that disagreement with the course of treatment does not establish deliberate indifference).

Because the Complaint alleges, at most, negligence or medical malpractice in prescribing and monitoring Rytsar's Coumadin, it fails to state an Eighth Amendment claim against Rockwood or Obeng.

C. The Complaint states a Fourteenth Amendment substantive due process claim for declaratory relief.

Rytsar bases her Fourteenth Amendment claim on Rockwell and Obeng's alleged failure to inform her of the potential side effects, risks, and drug interactions associated with Coumadin. In support of dismissal of this claim, Defendants argue that "[t]here is no federal informed consent statute or requirement." ECF No. 16, p. 10. This position, however, ignores federal precedent holding that under the Due Process Clause of the Fourteenth Amendment, prisoners "retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives." *White v. Napoleon*, 897 F.2d 103, 112–114 (3d Cir. 1990) (discussing that pursuant to the Due Process Clause of the Fourteenth Amendment, "[p]risoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting"); *see also Benson v. Terhune*, 304 F.3d 874, 884–885 (9th Cir. 2002) (discussing the Third Circuit's recognition of the right to medical information as set forth in *Napoleon* and describing it as a "reasonable application of Supreme Court precedent"); *Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006) (discussing that "the Fourteenth Amendment's recognized liberty interest in an individual's right to refuse medical treatment carries with it a concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment"). This precedent recognizes that a prison medical provider's

failure to provide such information and obtain informed consent to treatment may support a substantive due process claim.[4]

To state an informed consent substantive due process claim, the plaintiff must allege "(1) [she] was deprived of information that a reasonable patient would deem necessary to make an informed decision about [her] medical treatment, (2) the defendant[s] acted with deliberate indifference to [her] right to refuse treatment, and (3) if [she] had received the information, [she] would have refused the treatment." *Farmer-Shaw v. Wetzel*, 2026 WL 101475, at *6 (W.D. Pa. Jan. 14, 2026) (quoting *Knight v. Grossman*, 942 F.3d 336, 344 (7th Cir. 2019)). If the plaintiff establishes that her right to informed consent has been violated, the court must then "take the second and final step of balancing the prisoner's right to informed consent against countervailing state interests." *Id.* "Liability arises only if, in the end, the prisoner's right outweighs the state interests." *Id.*

As previously discussed, Rytsar's allegations do not support an Eighth Amendment cruel-and-unusual-punishment claim. But this does not foreclose an informed consent substantive due process claim because the elements of the two claims differ materially. The District Court for the Eastern District of Pennsylvania explained these differences as follows:

---

[4] The Supreme Court held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection ... that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (*citing Graham v. Connor*, 490 U.S. 386, 395 (1989)). While recognition of a substantive due process claim based on lack of medical informed consent may appear to be at odds with this holding given the applicability of the Eighth Amendment to most prison medical claims, a lack of informed consent claim has been found to be sufficiently distinct and grounded in due process to stand on its own. *See Quarles v. Bontempo*, 2025 WL 1822675, at *7 (E.D. Pa. July 2, 2025), *reconsideration denied*, 2025 WL 2837737 (E.D. Pa. Oct. 7, 2025).

> When considering inmate medical claims premised upon an alleged failure to inform, as well as deliberate indifference to medical needs, it is important to note that the contours of these two constitutional rights differ, and conduct which may not violate the Eighth Amendment might still deny an inmate his substantive due process right to refuse certain forms of treatment. For example, an inmate suffering from cancer may be presented with a series of treatment options, some of which involve invasive surgery and removal of body organs, while other forms of treatment may be less radical and invasive. A disagreement between the prisoner and his doctors regarding which treatment option to pursue, standing alone, may not constitute an Eighth Amendment violation. *See e.g., Gause v. Diguglielmo*, 339 F. App'x 132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation). However, if prison doctors unilaterally took it upon themselves to conduct surgery without the inmate's knowledge or consent, that action might still violate the substantive due process rights of the prisoner, even if the surgery fell within the range of medical treatment options permitted under the Eighth Amendment. *Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006); *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990). Yet, while the contours of these two constitutional claims differ, both claims share a common element of intent, and require a showing of deliberate indifference to establish liability. Further, cases construing the reach of both the Eighth Amendment and substantive due process protections in a prison setting consistently hold that mere negligence cannot be equated with deliberate indifference.

*Mercaldo v. Fisher*, 2017 U.S. Dist. LEXIS 14769 at *22-23 (M.D. Pa. Feb. 1, 2017).

Rytsar alleges that Rockwell and Obeng failed to inform her of the side effects and risks associated with Coumadin, including unusual or excessive bruising, nose bleeds, dizziness or weakness, and vision changes.[5] She further alleges that she

[5] Manufacturer and government disclosures list bleeding as the most common and serious potential side effect of taking Coumadin (warfarin). *See e.g.*, https://www.google.com/search?q=Bristol-Myers+Squibb+Coumadin+side+effects+disclosure&rlz=1C1GCEU_enUS887US887&oq=Bristol-

developed joint pain in her ankles and wrists, dizziness, extreme weakness and pain and swelling in her arms and legs, and periodic "blackening" in her vision. Rytsar's allegations plausibly support that the side effects and risks associated with Coumadin represented information that a reasonable patient would deem necessary to make an informed decision about whether to take the medication. And Rytsar alleges that had she received this information, she would have refused Coumadin.

The critical question presented by Defendants' motion is whether the facts alleged in the Complaint support a plausible inference that Rockwell or Obeng "acted with deliberate indifference to [Rytsar's] right to refuse treatment." *Knight*, 942 F.3d at 344. Ultimately, their conduct must be sufficiently egregious that it "shocks the conscious of the court." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). "The context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference that 'shocks the conscience' for a substantive due process violation." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (quoting *Lewis*, 523 U.S. at 486). Relevant here, a prison official is deliberately indifferent to a prisoner's right to refuse treatment if the official "subjectively knows ... that the [prisoner] would want to know the medical information being withheld in order to decide whether to refuse the treatment." *Knight*, 942 F.3d at 343. In other words, the prisoner must show the official "acted with the intent to induce [the

Myers+Squibb+Coumadin+side+effects+disclosure&gs_lcrp=EgZjaHJvbWUyBggAEEUYOdIBCTI5ODQ0ajBqOagCALACAQ&sourceid=chrome&ie=UTF-8 . Consistent with Rytsar's allegations, bleeding risk is reported to manifest in various ways, including excessive bruising, nose bleeds, dizziness or weakness, and vision changes. *Id.*

prisoner] to undergo treatment that he otherwise might have declined." *Pabon*, 459 F.3d at 254.

According to the Complaint, neither Rockwell nor Obeng disclosed to Rytsar the potential side effects, risks, or adverse drug interactions associated with Coumadin or advised her to the physical signs that would alert her to an adverse reaction to the medication. The Complaint supports a plausible inference that Rockwell and Obeng, as physicians, knew of the drug's potential side effects, risks, and adverse drug interactions and knew that a reasonable patient would need to know this information in making an informed decision regarding the drug. And the Court accepts, as it must, Rytsar's allegation that she would have declined the drug had she known this information.[6] Although Obeng is not alleged to have had any involvement in the initial prescribing of Coumadin to Rytsar in 2019, he is alleged to have increased her dosage in 2023. The same need for information underlying a patent's initial decision to take a medication would apply to her decision whether to accept an increased dosage of the same medication. Based on these alleged facts, the Complaint supports a plausible inference that both Rockwell and Obeng acted with deliberate indifference to Rytsar's right to refuse Coumadin. This conclusion is not inconsistent with the Court's prior holding that neither Rockwell nor Obeng acted

[6] The Court acknowledges that, according to the Complaint, Rockwell prescribed Coumadin in 2019 based on Rytsar's complaints of chest pains and that Rytsar apparently continued the medication for almost four years before she experienced any adverse side effects. The Complaint does not allege any facts to indicate that the drug failed to address the condition that caused her chest pains. It was only after her dosage was adjusted in 2023, that she experienced side effects. Thus, it appears that the drug served its intended therapeutic purpose and only caused adverse side effects after the dosage was adjusted. The Court also notes that the Complaint acknowledges that medical personnel periodically tested the coagulation factor of Rytsar's blood, apparently as a precaution based on her use of Coumadin.

with deliberate indifference to Rytsar's serious medical need. The deliberate indifference element of a Fourteenth Amendment substantive due process claim focuses on the patient's right to decline treatment. In contrast, the deliberate indifference inquiry under the Eighth Amendment focuses on the patient's overall care for her serious medical need. Although the decision to prescribe Coumadin for Rytsar's condition was a legitimate exercise of Defendants' medical judgment, Rockwell and Obeng's alleged failure to advise her of the risks of the drug may still be found to have been deliberately indifferent to her right to decline to take it.

The Court's finding that Rytsar's allegations are adequate to support the deliberate indifference element of her Fourteenth Amendment claim against Rockwell and Obeng does not end the inquiry. A prisoner's right to informed consent must still be balanced "against countervailing state interests." *Knight*, 942 F.3d at 344. But the Court presently lacks information necessary to balance these interests. The Complaint does not disclose the seriousness of the condition that prompted Rockwell to prescribe Coumadin or Obeng to alter its dosage. Such information and other factors may be relevant to the balancing element of the claim. Based on the face of the Complaint alone, the Court cannot say that the Commonwealth's interests outweigh Rytsar's right to informed consent.

Accordingly, Defendants' motion to dismiss will be denied as to Rytsar's Fourteenth Amendment substantive due process claim. As previously explained, however, Rytsar's only potential remedy based on this claim is declaratory relief.

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part. The motion will be granted to the extent Rytsar's Complaint seeks any form of monetary damages, including nominal or punitive damages, and to the extent it asserts an Eighth Amendment claim against the Defendants based on deliberate indifference to Rytsar's serious medical needs. The motion will be denied only to the extent the Complaint asserts a substantive due process claim and seeks declaratory relief based on Defendant Rockwell and Defendant Obeng's alleged failure to inform Rystar of the side effects, risks, and adverse drug interactions associated with their prescribing of Coumadin.

A separate Order will follow.

DATED this 28th day of August, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE